**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela Prescott, Esq. (SBN: 328342)
Pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff,*
Joshua Battles

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSHUA BATTLES,** | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES FOR VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *ET SEQ.*** |
| vs. | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** and **AMERICREDIT FINANCIAL SERVICES, INC. d/b/a GM FINANCIAL,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

# INTRODUCTION

1. Plaintiff Joshua Battles ("Plaintiff" or "Mr. Battles") brings this action against Defendants Experian Information Solutions, Inc. ("Experian"), and AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial") (together, "Defendants") for actual damages, statutory damages, punitive damages, attorney's fees and costs brought for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").

2. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

3. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for: credit or insurance to be used primarily for personal, family, or household purposes; employment; and any other purpose authorized under section 1681b.

4. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

5. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and

even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

6. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

7. Plaintiff brings claims for actual and punitive damages against Defendants for their inaccurate reporting, and for their failure to investigate Plaintiff's disputes of that inaccurate reporting that were the result of identity theft.

8. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiff's counsel, which Plaintiff alleges on personal knowledge.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

11. Unless otherwise indicated, the use of Defendants names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over Plaintiff's claims arising under the FCRA pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

13. This action arises out of Defendants' violations of the FCRA.

14. Because Defendant Experian has its principal place of business located within California and within this District, and GM Financial regularly does business in the State of California, including within this District, personal jurisdiction is

established.

15. Venue is proper in the United States District Court, Central District of California pursuant to 28 U.S.C. § 1391 for the following reasons: Experian is a resident of the State of California and within this District, a substantial part of the omissions giving rise to the claim occurred within this District, and Defendants are subject to this Court's personal jurisdiction.

## PARTIES

16. Plaintiff is natural person who, at all relevant times alleged herein, resides in Ocala, Florida

17. Plaintiff is, and was, at all relevant times a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

18. Defendant Experian is an Ohio Corporation and has its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

19. Defendant Experian is a consumer reporting agency ("CRA") as defined in 15 U.S.C. § 1681a(f) of the FCRA.

20. Defendant GM Financial has its principal place of business located at 801 Cherry Street, Fort Worth, TX 76102.

21. As part of its business, GM Financial regularly reports consumer accounts to national credit reporting agencies (often under the name AmeriCredit) for the purpose of having them appear on consumer credit reports. As alleged below, GM Financial knowingly reported a trade line on Plaintiff's consumer credit reports.

22. Defendant GM Financial is thus a furnisher of information as defined by the FCRA. 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

23. On or about August 24, 2022, an individual named Elija Decoursey ("Decoursey") fraudulently used Plaintiff's personal identification information, without Plaintiff's knowledge or consent, to buy a 2020 BMW 3 Series.

24. On or about August 25, 2022, Decoursey again fraudulently used Plaintiff's personal identification information to buy a 2019 GMC Sierra.

25. Decoursey forged Plaintiff's signature on all the documents related to the purchase of these vehicles.

26. Plaintiff did not authorize Decoursey to use his identity to buy these vehicles.

27. Plaintiff was unaware that Decoursey was buying these vehicles.

28. GM Financial approved financing for the 2019 GMC Sierra, and subsequently, was assigned the RISC agreement.

29. No payments were made on the GM Financial Account No.: 111062XXXXXX ("Account") leading GM Financial to charge off the account with an outstanding balance of approximately $57,228.

30. Upon learning that his identity was stolen, on or about June 16, 2023, Plaintiff filed a police report with the Gainesville Police Department (Case #: 02-23-008957) detailing the identity theft, which provides an official record of fraudulent activity.

### FACTUAL ALLEGATIONS AS TO EXPERIAN

31. GM Financial subsequently reported the charged-off balance on Plaintiff's credit report with Experian, TransUnion, LLC, and Equifax Information Services, Inc.

32. On or about July 28, 2023, Plaintiff mailed a dispute letter ("Dispute Letter 1") via priority mail to Experian disputing the inaccurate information on his credit report.

33. In Dispute Letter 1, Plaintiff provided his name, address, and social security number.

34. Plaintiff identified the Account on his Experian credit report.

35. Plaintiff stated that his identity was stolen by Decoursey who fraudulently signed the RISC agreement without his consent.

36. Plaintiff requested corrections to the reporting, which had negatively impacted Plaintiff's credit score and caused significant emotional distress.

37. Plaintiff disputed any indebtedness to GM Financial and asked that the Account be deleted.

38. Plaintiff emphasized that Experian's inaccurate reporting had harmed his credit score and caused emotional distress.

39. Plaintiff provided contact information for Gainesville Buick & GMC and his own contact details for further inquiries.

40. Plaintiff received no response from Experian.

41. On or about November 3, 2023, Plaintiff sent a second dispute letter ("Dispute Letter 2") via priority mail to Defendant Experian, which Experian received, reiterating the inaccuracies on Plaintiff's credit report and requesting an investigation to address and correct the inaccurate reporting.

42. In Dispute Letter 2, Plaintiff again disputed inaccurate information on his credit report concerning the AmeriCredit/GM Financial Account.

43. Plaintiff again stated that his identity was stolen by co-signer Elijah Decoursey, who fraudulently signed the retail installment sales contract without his consent.

44. Plaintiff denied any liability for the loan and provided supporting documentation, including his Experian credit report, the identity theft affidavit, and the police report.

45. Plaintiff requested Experian to remove the Account from his credit report, noting the harm to his credit score and emotional distress.

46. Plaintiff included contact information for Gainesville Buick & GMC and AmeriCredit/GM Financial, along with his personal phone number, for further inquiries.

47. Plaintiff received no response from Experian.

48. On or about March 1 2024, Plaintiff mailed another dispute letter ("Dispute Letter 3") via priority mail to Defendant Experian, which Experian received, disputing the ongoing inaccuracy on his credit report.

49. Plaintiff explained that Elijah Decoursey fraudulently used his identity, in collusion with Gainesville Buick & GMC, to buy the vehicle.

50. Plaintiff also explained that Gainesville Buick & GMC falsely listed Battles as the primary buyer on financing documents and submitted forged title and registration paperwork to the Florida Department of Highway Safety and Motor Vehicles without his knowledge or consent.

51. Plaintiff said GM Financial charged off the loan, causing significant harm to his credit and reputation.

52. Plaintiff again requested Experian to conduct a thorough investigation, remove the inaccurate information, and confirm the correction in writing.

53. Plaintiff attached supporting documentation, including an identity theft affidavit and a demand letter sent by his attorney, Joshua Feygin, to Gainesville Buick & GMC.

54. Plaintiff provided contact information for himself, the dealership, and AmeriCredit for further follow-up.

55. Plaintiff received no response from Experian.

56. On or about July 15, 2024, Plaintiff mailed another dispute letter ("Dispute Letter 4") via priority mail to Defendant Experian, which Experian received, emphasizing that Plaintiff had previously sent three letters requesting an investigation and correction of the inaccurate reporting of the Account on his credit report, which Experian had failed to remove.

57. In this letter, Plaintiff again requested Experian to conduct an investigation into the Account and remove it from his credit report given the obvious fraud perpetrated upon Plaintiff.

58. Plaintiff provided Experian with the identity theft affidavit, the police report, and a copy of his Experian report.

59. In the letter, Plaintiff again explained that—based on the same information provided to Experian—Equifax and TransUnion subsequently deleted the account from Plaintiff's credit report, but Experian continues to report the inaccurate information despite clear evidence of identity theft.

60. Plaintiff explained that Experian's failure to correct this reporting has caused significant financial and emotional harm.

61. Plaintiff asked that Experian conduct a thorough investigation and remove the inaccurate account from his credit report immediately.

62. Plaintiff attached supporting documentation, including an identity theft affidavit and a demand letter sent by his attorney, Joshua Feygin, to Gainesville Buick & GMC.

63. Plaintiff provided contact information for himself, the dealership, and AmeriCredit for further follow-up.

64. Despite receiving all of these letters of dispute, Experian continued to report the Account on his credit report.

**FACTUAL ALLEGATIONS AS TO GM FINANCIAL**

65. Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

66. Upon information and belief, Experian, Trans Union, and Equifax forwarded Plaintiff's dispute letters to GM Financial, which GM Financial received.

67. GM Financial continued reporting the Account on Plaintiff's credit reports despite Plaintiff's provision of evidence that the Account was not his and that he was the victim of identity theft.

68. On or about July 15, 2024, Plaintiff sent a letter to Defendant GM Financial disputing the Account, and detailing the impact of the continued inaccurate reporting had on Plaintiff's credit score, financial and mental well-being.

69. Plaintiff again requested GM Financial to conduct a thorough investigation into this matter and reiterated that he had been the victim of identity theft, leading to an unauthorized loan for a vehicle that Plaintiff neither approved nor signed for.

70. Plaintiff also informed GM Financial that he disputed the Account to the credit reporting bureaus, filed a police report, and filled out an identity theft affidavit.

71. Despite the evidence and efforts, GM Financial continued reporting the Account.

72. Despite these efforts, the subject account remains on Plaintiff's credit report.

73. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of lost loan and credit opportunities, credit defamation, time and expense dealt with repeatedly disputing the accounts and communicating with Defendant, as well as emotional distress, aggravation, frustration, and stress.

74. All necessary conditions precedent to the filing of this action have occurred.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681S-2, *ET SEQ*.**
**(AGAINST GM FINANCIAL)**

75. Plaintiff realleges and reaffirms the allegations contained in the proceeding paragraphs above as if fully set forth herein.

76. When a reinvestigation request is made by a consumer, credit furnishers (like GM Financial) as well as CRAs must conduct reasonable investigations to ensure maximum possible accuracy. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154-1157 (9th Cir. 2009).

77. Defendant GM Financial, as a furnisher of credit information to credit reporting agencies, owed a duty to Plaintiff to report accurate information and follow

reasonable procedures to report, investigate and correct disputes of information contained in credit reports.

78. The FCRA requires that the Defendant investigate disputed information, review all relevant information provided to it, report the results of its investigation to credit agencies, and where information is found to be inaccurate, incorrect or incomplete, to report same to all other consumer reporting agencies, all pursuant to § 1681s-2(b).

79. Defendant breached its statutory duty and failed to fulfill its obligations herein with respect to the Plaintiff and the subject disputed information all as alleged above.

80. GM Financial, alternatively, acted with reckless and willful disregard, by not fully, completely, accurately, and diligently investigating the dispute and/or failing to correct information that clearly was not that of the Plaintiff, and/or by verifying as correct or otherwise allowing the trade line to remain on Plaintiff's credit despite being made aware by Plaintiff of the nature of the dispute.

81. Simply verifying the Plaintiff's name, address, and/or social security number, and/or checking the original creditor's own records with Plaintiff's information, or comparing the principal creditor's documents provided by Plaintiff in the Identity Theft affidavit, the police report, and the many letters that requested for Defendant to conducted an investigation, would have revealed the account was not Plaintiff's and was being incorrectly reported by Experian.

82. By allowing false information to remain on Plaintiff's reports, Plaintiff has suffered the risk that false and inaccurate credit information about him is being disseminated to third parties or could be disseminated at any time. Through the FCRA, Congress has recognized that the risk of such harm is a concrete injury, whether tangible or intangible, worthy of protection. Additionally, common law has long recognized torts for invasion of privacy and defamation, harms akin to those protected by the FCRA.

83. Plaintiff now has a significant debt on his credit that is not his nor related to him. Plaintiff everyday is at risk that a creditor will see such information and that his credit score will be lower than it should be due to Defendant's negligence.

84. The tangible and intangible rights given to Plaintiff by Congress through the FCRA, which include the right to have accurate credit information reported and disseminated, as well as to know any future information dissemination in the future will be accurate, have been violated by the actions and omissions of the Defendant.

85. As a result of the errors and omissions herein, Plaintiff has suffered damages including loss of credit, loss of credit opportunities, and frustration, anger, pain and embarrassment.

86. The actions errors and omissions of the Defendant herein were willful, pursuant to 15 U.S.C. § 1681n, entitling Plaintiff to statutory and punitive damages, and in the alternative, Defendant's actions herein constitute negligence pursuant to 15 U.S.C. § 1681o.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681I, *ET SEQ*.**
**(AS TO EXPERIAN)**

87. Plaintiff realleges and reaffirms the allegations contained in the proceeding paragraphs above as if fully set forth herein.

88. When a reinvestigation request is made by a consumer, credit furnishers (and CRAs) must conduct reasonable investigations to ensure maximum possible accuracy. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156-1157 (9th Cir. 2009).

89. Experian violated 15 U.S.C. § 1681i by failing to delete or correct the inaccurate information on Plaintiff's credit report after being made aware of said inaccuracies, by failing to maintain and follow reasonable procedures related to the review of disputed information, by failing to maintain and follow reasonable

1 procedures related to the review of disputed information, by failing to give due
2 weight to relevant information concerning Plaintiff's dispute, and by relying upon
3 sources for verification of the disputed information which it has reason to know are
4 inaccurate or unreliable.

5   90.   A reasonable investigation would have revealed that Plaintiff had not
6 incurred the subject account, and that there is no reliable documentation (or
7 documentation with his signature) that he agreed to any leases as are identified in the
8 trade line. Plaintiff provided evidence such as the identity theft affidavit, police
9 report, and others to allow comparison with the furnisher's documentation (if any was
10 ever provided or reviewed by GM Financial).

11   91.   Thus, the actions errors and omissions of the Defendant herein were
12 willful, pursuant to 15 U.S.C. § 1681n, entitling the Plaintiff to statutory and punitive
13 damages, and in the alternative, Defendant's actions herein constitute negligence
14 pursuant to 15 U.S.C. § 1681o. Had Defendant conducted a reasonable investigation
15 Plaintiff would not have had to dispute the false and inaccurate credit information
16 four distinct times.

17   92.   By allowing false information to remain on Plaintiff's reports, Plaintiff
18 has suffered the risk that false and inaccurate credit information about him is being
19 disseminated to third parties or could be disseminated at any time. Through the
20 FCRA, Congress has recognized that the risk of such harm is a concrete injury,
21 whether tangible or intangible, worthy of protection. Additionally, common law has
22 long recognized torts for invasion of privacy and defamation, harms akin to those
23 protected by the FRCA.

24   93.   Plaintiff now has a significant debt on his credit that is not his nor
25 related to him. Plaintiff is at risk daily that a creditor will see such information, and at
26 risk that his credit score will be lower than it should be because of Defendant's
27 negligence.
28

94. The tangible and intangible rights givens to Plaintiff by Congress through the FCRA, which include the right to have accurate credit information reported and disseminated, as well as to know any future information dissemination will be accurate, have been violated by the actions and omission of the Defendant herein.

95. As a result of the errors and omissions herein, Plaintiff has suffered damages including loss of credit, loss of credit opportunities, and frustration, anger, pain and embarrassment.

96. The actions, errors, and omissions of the Defendant were willful, pursuant to 15 U.S.C. § 1681n, entitling the Plaintiff to statutory and punitive damages, and in the alternative, Defendant's actions herein constitute negligence pursuant to 15 U.S.C. §1681o.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for:

- An award of actual damages, in an amount to be determined at rial, of a maximum of $1,0000 pursuant to 15 U.S.C. §1681n(a)(1)(A), against Defendant for each incident of willful noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. §1681o(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA;

- Statutory damages;

- Punitive damages according to proof as to the FCRA, including an award of punitive damages, as the Court may allow pursuant to 15 U.S.C. §1681n and/or §1681o, against each defendant for each incident of willful noncompliance with the FCRA;

- Costs and reasonably attorney's fees pursuant to 15 U.S.C. §1681n and 1681o;

- Any and all other relief the Court deems just and proper.

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: February 10, 2025                    Respectfully submitted,

                                           **KAZEROUNI LAW GROUP, APC**

                                By: /s/ *Abbas Kazerounian, Esq.*
                                        ABBAS KAZEROUNIAN, ESQ.
                                        PAMELA E. PRESCOTT, ESQ.
                                        *Attorneys for Plaintiff*