# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOSHUA BATTLES,

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC. AND AMERICREDIT
FINANCIAL SERVICES, INC.,

      Defendants,

v.

ELIJAH DECOURSEY,

      Third-Party Defendant,

Civil Action No.
6:25-cv-00917-RBD-RMN

_____/

## DEFENDANT AMERICREDIT FINANCIAL SERVICES, INC. D/B/A GM FINANCIAL'S AMENDED ANSWER, COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant, AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial"), answers the Complaint filed by Plaintiff, Joshua Battles, as follows:

## INTRODUCTION

1.    In response to Paragraph 1, GM Financial admits that Plaintiff has brought this action against GM Financial. GM Financial further states that the remainder of the paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required,

GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 1.

2.      In response to Paragraph 2, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 2.

3.      In response to Paragraph 3, GM Financial states that this paragraph is contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial denies the remaining allegations in Paragraph 3.

4.      In response to Paragraph 4, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 4.

5.      In response to Paragraph 5, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 5.

6.      In response to Paragraph 6, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 6.

7.      In response to Paragraph 7, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 7.

8.      In response to Paragraph 8, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 8.

9.      In response to Paragraph 9, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 9.

10.     In response to Paragraph 10, as to itself, GM Financial denies the allegations in Paragraph 10. Except as expressly provided, GM Financial lacks sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 10.

11.     In response to Paragraph 11, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 11. GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 11 as to other Defendants.

## JURISDICTION AND VENUE

12.     In response to Paragraph 12, GM Financial does not contest that the jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state claims. To the extent a further response is the remaining allegations in Paragraph 12.

13.     In response to Paragraph 13, as to itself, GM Financial denies the allegations in Paragraph 13. Except as expressly provided, GM Financial lacks sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 13.

14.     In response to Paragraph 14, GM Financial does not contest that personal jurisdiction is established as to GM Financial. To the extent a further

response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 14.

15.    In response to Paragraph 15, GM Financial does not contest that venue is established as to GM Financial. To the extent a further response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 15.

## PARTIES

16.    In response to Paragraph 16, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 16.

17.    In response to Paragraph 17, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 17.

18.    In response to Paragraph 18, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks

sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 18.

19.    In Response to Paragraph 19, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 19.

20.    In response to Paragraph 20, GM Financial avers that its principal place of business is at 801 Cherry Street, Fort Worth, Texas.

21.    In response to Paragraph 21, GM Financial states that this paragraph contains legal conclusions and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 21.

22.    In response to Paragraph 22, GM Financial states that this paragraph contains legal conclusions as it relates to FCRA 15 USC § 1681s-2 and/or opinions that are not subject to admission or denial. To the extent a response is required, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 22.

## FACTUAL ALLEGATIONS

23.     In response to Paragraph 23, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 23.

24.     In response to Paragraph 24, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 24.

25.     In response to Paragraph 25, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 25.

26.     In response to Paragraph 26, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 26.

27.     In response to Paragraph 27, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 27.

28.     In response to Paragraph 28, GM Financial denies the allegations contained therein. GM Financial did not take assignment of a 2019 GMC Sierra. GM Financial did take assignment of a 2020 BMW 3 Series with VIN . . .H12521

29.     In response to Paragraph 29, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 29. The account number associated with the BMW 3 Series with VIN . . .H12521 is Account # 111062XXXXXX.

30.     In response to Paragraph 30, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 30.

## FACTUAL ALLEGATIONS AS TO EXPERIAN

31.    In response to Paragraph 31, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 31.

32.    In response to Paragraph 32, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 32.

33.    In response to Paragraph 33, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 33.

34.    In response to Paragraph 34, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 34.

35.    In response to Paragraph 35, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 35.

36.    In response to Paragraph 36, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 36.

37.    In response to Paragraph 37, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 37.

38.    In response to Paragraph 38, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 38.

39.    In response to Paragraph 39, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 39.

40.    In response to Paragraph 40, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 40.

41.    In response to Paragraph 41, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 41.

42.    In response to Paragraph 42, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 42.

43.    In response to Paragraph 43, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 43.

44.    In response to Paragraph 44, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 44.

45.    In response to Paragraph 45, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 45.

46.    In response to Paragraph 46, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 46.

47.    In response to Paragraph 47, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 47.

48.    In response to Paragraph 48, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 48.

49.    In response to Paragraph 49, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 49.

50.    In response to Paragraph 50, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 50.

51.    In response to Paragraph 51, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 51.

52.    In response to Paragraph 52, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 52.

53.    In response to Paragraph 53, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 53.

54.    In response to Paragraph 54, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 54.

55.    In response to Paragraph 55, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 55.

56.    In response to Paragraph 56, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 56.

57.    In response to Paragraph 57, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 57.

58.    In response to Paragraph 58, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 58.

59.    In response to Paragraph 59, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 59.

60.    In response to Paragraph 60, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 60.

61.    In response to Paragraph 61, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 61.

62.    In response to Paragraph 62, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 62.

63.    In response to Paragraph 63, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 63.

64.    In response to Paragraph 64, GM Financial lacks sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 64.

## FACTUAL ALLEGATIONS AS TO GM FINANCIAL

65.    In response to Paragraph 65, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 65 and on that ground denies them.

66.    In response to Paragraph 66, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 66 and on that ground denies them.

67.    In response to Paragraph 67, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 67 and on that ground denies them.

68.    In response to Paragraph 68, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 68 and on that ground denies them.

69.    In response to Paragraph 69, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 69 and on that ground denies them.

70.    In response to Paragraph 70, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 70 and on that ground denies them.

71.    In response to Paragraph 71, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 71 and on that ground denies them.

72.    In response to Paragraph 72, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 72 and on that ground denies them.

73.    In response to Paragraph 73, GM Financial denies the allegations contained therein.

74.    In response to Paragraph 74, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 74 and on that ground denies them.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681S-2, ET SEQ.**
**(AGAINST GM FINANCIAL)**

75.    In response to Paragraph 75, GM Financial re-alleges and incorporates herein its response to each and every Paragraph 75 above as though fully set forth herein.

76.    In response to Paragraph 76, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 76.

77.    In response to Paragraph 77, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 77.

78.    In response to Paragraph 78, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 78.

79.    In response to Paragraph 79, GM Financial denies the allegations contained therein.

80.    In response to Paragraph 80, GM Financial denies the allegations contained therein.

81.    In response to Paragraph 81, this paragraph contains a legal conclusion and hypothetical that do not require a response. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 81.

82.    In response to Paragraph 82, GM Financial denies the allegations contained therein. This paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 82.

83.    In response to Paragraph 83, as to the alleged negligence of GM Financial, it denies the allegations. Except as expressly provided, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 83 and on that ground denies them.

84.    In response to Paragraph 84, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks

for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 84.

85.    In response to Paragraph 85, GM Financial denies the allegations contained therein.

86.    In response to Paragraph 86, GM Financial denies the allegations contained therein.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681I, ET SEQ.
## (AS TO EXPERIAN)

87.    In response to Paragraph 87, GM Financial re-alleges and incorporates herein its response to each and every Paragraph 87 above as though fully set forth herein.

88.    In response to Paragraph 88, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 88.

89.    In response to Paragraph 89, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 89.

90.    In response to Paragraph 90, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 90.

91.    In response to Paragraph 91, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 91.

92.    In response to Paragraph 92, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is

required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 92.

93.    In response to Paragraph 93, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 93 and on that ground denies them.

94.    In response to Paragraph 94, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 94.

95.    In response to Paragraph 95, GM Financial lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 95 and on that ground denies them.

96.    In response to Paragraph 96, this paragraph contains a legal conclusion that does not require a response. The FCRA is a statute that speaks for itself and the cases speak for themselves. To the extent a response is required, GM Financial responds that it lacks information or belief sufficient to answer the allegations in this paragraph and on that ground denies the allegations in Paragraph 96.

## PRAYER FOR RELIEF

In response to the relief requested in the Prayer for Relief, GM Financial denies that Plaintiff is entitled to the requested relief for the reasons set forth in this answer, and denies that Plaintiff is entitled to any relief whatsoever.

## JURY DEMAND (BY PLAINTIFF)

GM Financial admits that Plaintiff has demanded a jury trial.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the Second Amended Complaint and to each allegation contained therein, GM Financial hereby alleges the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim for Relief)

The Complaint fails to state a claim upon which relief can be granted against GM Financial.

### SECOND AFFIRMATIVE DEFENSE
### (Lack of Standing)

Plaintiff lacks standing to pursue the claims alleged in the complaint because Plaintiff suffered no injury in fact as a result of the challenged conduct.

### THIRD AFFIRMATIVE DEFENSE
### (No Negligent or Willful Conduct)

As a separate affirmative defense, GM Financial contends that it did not engage in any conduct that was intentional, willful, reckless, wanton or done with negligent disregard with respect to Plaintiff.

## FOURTH AFFIRMATIVE DEFENSE
### (Plaintiff's Failure to Comply With Notice Provisions)

GM Financial is informed and believes, and thereupon alleges, Plaintiff's claims under the FCRA are barred because Plaintiff failed to provide notice as required under 15 U.S.C § 1681s-2(b).

## FIFTH AFFIRMATIVE DEFENSE
### (Reasonable Investigation)

GM Financial is informed and believes, and thereupon alleges, Plaintiff's claims under the FCRA are barred because GM Financial conducted a reasonable investigation and carried out its duties pursuant to 15 U.S.C. §1681s-2(b).

## FIFTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate)

Plaintiff's claims are barred in whole or in part as a result of his failure to mitigate alleged damages, if any. Further, to the extent Plaintiff seeks recovery for actual damages, such damages, if any, should be reduced in proportion to Plaintiff's failure to mitigate.

## SIXTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations, including, but not limited to: 15 U.S.C. §1681p.

## SEVENTH AFFIRMATIVE DEFENSE
### (Compliance with Governing Law)

GM Financial's conduct was consistent with, permitted by, dictated by and in certain respects required by, applicable federal and state law, and therefore cannot be the subject of recovery in this action.

## EIGHTH AFFIRMATIVE DEFENSE
### (Good Faith)

This action is barred, in whole or in part, because GM Financial always acted in good faith and honesty in fact, and always observed reasonable commercial standards of fair dealing in the trade when dealing with Plaintiff and GM Financial's conduct is and was privileged or justified. To the extent there was any violation of the FCRA, which GM Financial denies, such violation(s) were not knowing and willful. GM Financial acted lawfully and within its legal rights, with good faith belief in the exercise of those rights, and in the furtherance of legitimate business purposes. Accordingly, Plaintiff is barred from any recovery in this action.

## NINTH AFFIRMATIVE DEFENSE
### (Consent/Ratification)

Plaintiff consented to all of GM Financial's acts or omissions which gave rise to the occurrences alleged in the Complaint, and subsequently ratified that conduct.

## TENTH AFFIRMATIVE DEFENSE
### (Reasonably Available Alternatives)

Plaintiff is barred from bringing the Complaint, and the claims contained therein, because Plaintiff had a reasonably available alternative to

the action which Plaintiff took or failed to take. Plaintiff could have avoided, in whole or in part, the damages alleged in the Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Responsibility of Third Parties)

Any injury or damage to Plaintiff was a result of the intentional, negligent, or otherwise wrongful acts of third parties, and any claims against GM Financial should be reduced in proportion to the faults of those third parties.

## TWELFTH AFFIRMATIVE DEFENSE
### (Set-Off)

Plaintiff's claims are subject to set-off of all sums due and owing to GM Financial, and/or all amounts previously paid, disbursed, or credited to Plaintiff by GM Financial, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Truth/Accuracy of Information)

Plaintiff's claims are precluded because the information furnished by GM Financial, if any, was and is true and accurate.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Substantial Compliance)

As a separate affirmative defense, GM Financial asserts it substantially complied with the requirements of the FCRA.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Compliance with Governing Law)

GM Financial asserts it complied with the statutes, rules, and regulation which govern the subject matter of this lawsuit.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (Mitigation of Damages)

Plaintiff is not entitled to recovery of any damages, or any recovery awarded should be reduced by the amount of damages which reasonably could have been avoided, because Plaintiff failed to take reasonable steps to mitigate her damages with respect to the matters alleged in the complaint.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (Failure to Join Necessary Parties)

Plaintiff has failed to join necessary and/or indispensable parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (Excessive Fines)

The award of statutory penalties under the FCRA against GM Financial would violate the prohibition against excessive fines of the United States Constitution. Statutory penalties violate due process rights "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992), quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 66-67 (1919); *People ex. rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 37 Cal.4th 707, 726-730 (2005). The alleged violations at issue in this matter cause de minimis or no actual harm. Imposition of a $1,000 penalty per violation of the

FCRA, $100- $5,000 penalty—taken in the aggregate—may result in potential damages that are not proportional to the conduct alleged.

## NINETEENTH AFFIRMATIVE DEFENSE
### (No Damages)

GM Financial is informed and believes, and thereupon alleges, that Plaintiff has not sustained any damages in connection with the claims Plaintiff seeks to assert through this action. For that reason, Plaintiff is prevented from recovering under the FCRA 15 U.S.C. §1681o, as damages are required by this section.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Maintenance of Reasonable Policies and Procedures)

To the extent there was any violation of the FCRA, which GM Financial denies, GM Financial is not liable because at the time of the violation GM Financial maintained reasonable procedures to comply with the provisions of these Acts. Any violations by GM Financial were unintentional and resulted despite the maintenance of procedures reasonably adapted to avoid such violations.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Bona Fide Error)

Plaintiff's Complaint and each claim for relief therein are precluded because Plaintiff's damages, if any exist, resulted from a bona fide error

notwithstanding maintenance of procedures reasonably adapted to avoid such errors.

### TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Privilege)

GM Financial is informed and believes and on that basis alleges that GM Financial's conduct alleged in the Complaint is privileged under the applicable statutes.

### TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Causation)

As a separate affirmative defense, GM Financial contends any alleged FCRA violation did not directly cause harm or damages to Plaintiff, thus negating liability.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Private Right of Action)

Plaintiff does not have a private right of actions against GM Financial under the FCRA.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Complete and Accurate)

GM Financial alleges that any information furnished to the consumer credit reporting agencies is accurate and complete.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (No Material Violation)

GM Financial alleges that any violation of the FCRA was not material.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE
### (Due Process)

The imposition of statutory damages under the FCRA, and/or punitive damages against GM Financial would violate the Due Process provision of the United States Constitution. Specifically, grossly excessive penalties entered on a discretionary basis may amount to an "arbitrary deprivation of property without due process of law." *E.g., TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 453, 454 (1993); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 562 (1996); *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 426 (2003). The alleged violations at issue in this matter cause de minimis or no actual harm. Hence, imposition of the statutory and punitive damage elements built into the FCRA would violate the *BMW* proportionality as to Plaintiff.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE
### (Equitable Defenses)

As a separate affirmative defense, the complaint, and each cause of action alleged therein against GM Financial are barred by doctrines of estoppel, waiver, unclean hands, and other equitable doctrines.

## TWENTY-NINTH AFFIRMATIVE DEFENSE
### (Arbitration)

Plaintiff's Lease Agreement contains an Arbitration Clause that requires Plaintiff to arbitrate any and all claims Plaintiff may have against GM

Financial. GM Financial expressly reserves and does not waive the requirement that Plaintiff arbitrate in this claim.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

GM Financial counterclaims against Plaintiff, Joshua Battles, and sues Third-Party Defendant, Elijah Decoursey, and states:

### General Allegations

1.     Joshua Battles is the plaintiff herein.

2.     Third-Party Defendant, Elijah Decoursey, is an individual who resides in Alachua County, Florida.

3.     On August 25, 2022, Mr. Battles and Mr. Decoursey executed a Retail Installment Sales Contract (the "Contact") with Gainesville Buick GMC ("Gainesville Buick") for the purchase of a 2020 BMW 3 Series, Vehicle Identification No. WBA5U9CO9LFH12521 (the "Vehicle"). A true and correct copy of the Contract is attached hereto as Exhibit "A."

4.     Gainesville Buick immediately assigned its interest in the Contract to GM Financial.

5.     The requires Mr. Battles and Mr. Decoursey to make eighty-four (84) monthly payments of $1,128.60 to GM Financial.

6.     The Contract specifies that the failure of Mr. Battles or Mr. Decoursey to make any monthly payment on time constitutes a default.

7.    One or more events of default occurred under the Contract including, but not limited to, Mr. Battles and Mr. Decoursey's failure to make payments when due under the Contract.

8.    Pursuant to the Contract, GM Financial repossessed the Vehicle as a result of Mr. Battles and Mr. Decoursey's default.

9.    Pursuant to the Contract, as of September 29, 2025, Mr. Battle and Mr. Decoursey owe a balance of $58,208.65, plus accrued interest, fees and other charges and less the value of the repossessed vehicle.

10.    All conditions precedent to the filing of this action have been performed, waived or excused by law.

11.    GM Financial has engaged Burr & Forman LLP to prosecute the instant action, and has agreed to pay said attorneys a reasonable fee for their services, for which amount Mr. Battles and Mr. Decoursey's are obligated pursuant to the terms of the Contract and Florida law.

## Breach of Contract

12.    GM Financial has complied with its obligations under the Contract.

13.    Mr. Battles and Mr. Decoursey materially breached the Contract by failing to make payments when due thereunder.

14.    Mr. Battles and Mr. Decoursey are jointly and severally liable to GM Financial for breach of the Contract in the amount of $58,208.65, plus

accrued interest, fees and other charges and less the value of the repossessed vehicle as of September 29, 2025. The foregoing amount is exclusive of attorneys' fees and other legally-recoverable costs

## GM FINANCIAL'S PRAYER FOR RELIEF

WHEREFORE, GM Financial prays for relief as follows:

1.   That, with respect to the Complaint, Plaintiff take nothing and the Court enter a final judgment in favor of GM Financial and awarding it the costs of suit and reasonable attorneys' fees;

2.   That, with respect to its Counterclaim and Third-Party Complaint, the Court enter a final judgment against Mr. Battles and Mr. Decoursey awarding GM Financial its compensatory damages, together with an award of costs and reasonable attorneys' fees pursuant to the terms of the Contract; and

3.   For such other and further relief as the Court finds just and proper

Respectfully submitted this 29th day of September, 2025.

**BURR & FORMAN LLP**

By:   /s/ M. Scott Thomas
**M. SCOTT THOMAS** (lead counsel)
Florida Bar No.: 0994898
50 North Laura Street, Suite 3000
Jacksonville, Florida 32202
Telephone: (904) 232-7200
Facsimile: (904) 232-7201

**ATTORNEYS FOR DEFENDANT**
**AmeriCredit Financial Services,**
**Inc. d/b/a GM Financial**

**Primary and Secondary E-mail Addresses:**
msthomas@burr.com
jmlewis@burr.com

# LAW 553-FL-ARB-eps-14 9/19

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address | Co-Buyer Name and Address | Seller - Creditor (Name and Address) |
|---|---|---|
| JOSHUA BATTLES<br>231 SE 140TH AVE<br>WILLISTON FL 32696 | ELIJAH DECOURSEY<br>231 SE 140TH AVE<br>WILLISTON FL 32696 | GAINESVILLE BUICK GMC<br>2101 N. MAIN STREET<br>GAINESVILLE FL 32609 |
| Buyer's Birth Month: MAY | Co-Buyer's Birth Month: DECEMBER | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of ___12.85___ % per year. The Truth-In-Lending Disclosures below are part of this contract.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| USED | 2020 | BMW<br>3 SERIES | | WBA5U9C09LFH12521 | Personal, family, or household unless otherwise indicated below<br>☐ business ☐ agricultural ☐ N/A |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 0.00 is |
|---|---|---|---|---|
| 12.85 % | $ 32816.78 | $ 61985.62 | $ 94802.40 | $ 94802.40 |

Returned Payment Charge: If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

Florida documentary stamp tax required by law in the amount of $ ___217.00___ has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. N/A

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | 1128.60 | Monthly beginning 10/09/2022 |
| N/A | N/A | N/A |
| Or As Follows: N/A | | |

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

**APPLICABLE LAW**
Federal law and the law of the state of Florida apply to this contract.

**Late Charge.** If payment is not received in full within ___10___ days after it is due, you will pay a late charge of ___5___ % of each installment.

**Prepayment.** If you pay early, you may have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, the cost of this insurance is $ ___N/A___ and is also shown in item 5B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer Signs X N/A _____ Co-Buyer Signs X N/A _____ Date: N/A

### Trade-In Vehicle

| | |
|---|---|
| Year N/A Make N/A | Year N/A Make N/A |
| Model N/A | Model N/A |
| VIN N/A | VIN N/A |
| Gross Trade-In Allowance $ N/A | Gross Trade-In Allowance $ N/A |
| Payoff Made by Seller $ N/A (e) | Payoff Made by Seller $ N/A (e) |
| Lienholder N/A | Lienholder N/A |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or required any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials N/A Co-Buyer Initials N/A

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the trade-in payoff amount shown above and in Item 2 of the Itemization of Amount Financed as the Pay Off Made by Seller. You understand that the amount quoted is an estimate.

Seller agrees to pay the payoff amount shown above and in Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" on page 4 of this contract, any assignee of this contract will not be obligated to pay the Pay Off Made by Seller shown above and in Item 2 or any refund.

Buyer Signature X N/A _____ Co-Buyer Signature X N/A

Buyer Initials X [signature] Co-Buyer Initials X ED

ORIGINAL LIENHOLDER

**ITEMIZATION OF AMOUNT FINANCED**

1 Cash Price (including $ 3268.70 sales tax) ............................ $ 55725.70 (1)

2 Total Downpayment =

|  |  |  |
|---|---|---|
| Gross Trade-In Allowance | $ | N/A |
| Less Pay Off Made By Seller (e) | $ | N/A |
| Equals Net Trade In | $ | N/A |
| + Cash | $ | N/A |
| + Other N/A | $ | N/A |
| + Other N/A | $ | N/A |

(If total downpayment is negative, enter "0" and see 5J below) ......... $ N/A (2)

3 Unpaid Balance of Cash Price (1 minus 2) ........................... $ 55725.70 (3)

4 Predelivery Service Fees

A Predelivery Service Charge .................................. $ 999.00

B Electronic Registration Filing Fee ............................ $ N/A

C PTA FEE ................................................. $ 189.00

These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.

Total Predelivery Service Fees ................................. $ 1188.00 (4)

5 Other Charges Including Amounts Paid to Others on Your Behalf

(Seller may keep part of these amounts):

A Cost of Optional Credit Insurance Paid to Insurance Company or Companies

Life $ N/A

Disability $ N/A ........................................ $ N/A

B Vendor's Single Interest Insurance Paid to Insurance Company ... $ N/A

C Other Optional Insurance Paid to Insurance Company or Companies $ N/A

D Optional Gap Contract ...................................... $ 995.00

E Official Fees Paid to Government Agencies .................... $ N/A

F Government Documentary Stamp Taxes ....................... $ 217.00

G Government Taxes Not Included in Cash Price ................ $ 241.92

H Government License and/or Registration Fees

TRANS FEE ............................................... $ 162.00

I Government Certificate of Title Fees ......................... $ N/A

J Other Charges (Seller must identify who is paid and describe purpose)

| to | for | |
|---|---|---|
| N/A | for Prior Credit or Lease Balance (e) | $ N/A |
| FIDELITY | for SERVICE CONTRACT | $ 3456.00 |
| N/A | for N/A | $ N/A |
| N/A | for N/A | $ N/A |
| N/A | for N/A | $ N/A |
| N/A | for N/A | $ N/A |
| N/A | for N/A | $ N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf ... $ 5071.92 (5)

6 Loan Processing Fee Paid to Seller (Prepaid Finance Charge) ...... $ N/A (6)

7 Amount Financed (3 plus 4 plus 5) ............................. $ 61985.62 (7)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before N/A , Year N/A . SELLER'S INITIALS N/A

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 5D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term 84 Mos. Name of Gap Contract CARCO GAP

I want to buy a gap contract. Buyer Signs X _(signature)_

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked on page 1 of this contract. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.

If any insurance is included in this contract, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

**Optional Credit Insurance**

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both

Term N/A

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both

Term N/A

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A

N/A

Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 5A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments: 1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

| X N/A | N/A |
|---|---|
| Buyer | Date |
| X N/A | N/A |
| Co-Buyer | Date |

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

| X N/A | N/A |
|---|---|
| Buyer | Date |
| X N/A | N/A |
| Co-Buyer | Date |

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

| X N/A | N/A |
|---|---|
| Buyer | Date |
| X N/A | N/A |
| Co-Buyer | Date |

---

**Other Optional Insurance**

| ☐ N/A | N/A | N/A | N/A |
|---|---|---|---|
| Type of Insurance | | Term | |

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

| ☐ N/A | N/A | Premium $ N/A |
|---|---|---|
| Type of Insurance | Term | |

Ins. Co. Name & Address N/A

N/A

| ☐ N/A | N/A | N/A | N/A |
|---|---|---|---|
| Type of Insurance | | Term | |

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

| ☐ N/A | N/A | Premium $ N/A |
|---|---|---|
| Type of Insurance | Term | |

Ins. Co. Name & Address N/A

N/A

| ☐ N/A | N/A |
|---|---|
| Type of Insurance | Term |

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked in this box.

| X N/A | N/A |
|---|---|
| Buyer Signature | Date |
| X N/A | N/A |
| Co-Buyer Signature | Date |

---

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 5 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X _(signature)_ Co-Buyer Signs X _(signature)_

Buyer Initials X 2O3 Co-Buyer Initials X ED

ORIGINAL LIENHOLDER

**OTHER IMPORTANT AGREEMENTS**

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose as the law allows.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more, if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.

If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security interest.**
You give us a security interest in:
   • The vehicle and all parts or goods put on it;
   • All money or goods received (proceeds) for the vehicle;
   • All insurance, maintenance, service, or other contracts we finance for you; and
   • All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   • You do not pay any payment on time;
   • You give false, incomplete, or misleading information during credit application;
   • You start a proceeding in bankruptcy or one is started against you or your property; or
   • You break any agreements in this contract.
The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**
**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. OPTIONAL SERVICE CONTRACTS**
You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**7. REJECTION OR REVOCATION**
If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**8. SERVICING AND COLLECTION CONTACTS**
You agree that we may try to contact you in writing, by e-mail, or using pre-recorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

Buyer Initials X _DB_   Co-Buyer Initials X _ED_   ORIGINAL LIENHOLDER   LAW 553-FL-ARB-eps-14 9/19 v1   Page 3 of 5

**Seller's Right to Cancel**

a.  Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on page 1 of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on page 5 of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.

b.  If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c.  Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.

d.  If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on page 5 of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.

e.  While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on page 5 of this contract) remain in effect even after you no longer have possession of the vehicle.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

Buyer Initials X _ZB_    Co-Buyer Initials X _ED_

ORIGINAL LIENHOLDER

Case 6:25-cv-00917-RBD-RMN    Document 1    Filed 09/29/25    Page 34 of 34 PageID 64

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 (www.adr.org), or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district in which this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

---

**SELLER'S RIGHT TO CANCEL** - If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section on page 4, which gives the Seller the right to cancel if Seller is unable to assign this contract within ___45___ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ ___25.00___ per day from the date of cancellation until the vehicle is returned or repossessed.

X _Scottless_        X _atto-Deli_
**Buyer Signs**          **Co-Buyer Signs**

---

### NO COOLING OFF PERIOD
**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.  Buyer Signs X _Scottless_____ Co-Buyer Signs X _atto-Deli_____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO THE BUYER: a)** Do not sign this contract before you read it or if it contains any blank spaces. **b)** You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

**You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.**

Buyer Signs X _Scottless_____ Date 08/25/22 Co-Buyer Signs X _atto-Deli___ Date 08/25/22
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name **N/A** _____ Title **N/A**
Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.
Other owner signs here X **N/A** _____ Address **N/A** _____
Seller Signs **GAINESVILLE BUICK GMC** Date **08/25/22** By X _____ Title **FINANCE**

Seller assigns its interest in this contract to **GM FINANCIAL** (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse
**GAINESVILLE BUICK GMC** _____ **FINANCE**
Seller                    By            Title

---

**LAW FORM NO. 553-FL-ARB-ops-14** (REV.9/19)
©2019 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

LAW 553-FL-ARB-ops-14 9/19 v1    Page 5 of 5

ORIGINAL LIENHOLDER