## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

Case No: 6:25-cv-00917-RBD-DCI

| | |
|---|---|
| JOSHUA BATTLES, | ) |
| | ) |
| Mr. Battles, | ) |
| | ) |
| v. | ) |
| | ) |
| EXPERIAN INFORMATION | ) |
| SOLUTIONS, INC. AND | ) |
| AMERICREDIT FINANCIAL | ) |
| SERVICES, INC., | ) |

Defendants.

**PLAINTIFF'S OPPOSITION TO AMERICREDIT FINANCIAL
SERVICES, INC.'S MOTION FOR LEAVE TO FILE AMENDED
ANSWER TO ASSERT A COUNTERCLAIM AND THIRD-PARTY
<u>COMPLAINT</u>**

## I.   INTRODUCTION

Plaintiff Joshua Battles' identity was stolen. He did everything right—filed a police report, sent an identity-theft affidavit, and disputed the account multiple times with the furnisher, Americredit Financial Services, Inc. d/b/a GM Financial ("Defendant"). Defendant did everything wrong. It ignored the evidence, clicked verified, and kept reporting a false $57,000 debt in his name. A textbook failure to conduct a reasonable reinvestigation under Fair Credit Reporting Act ("FCRA").

After eight months of litigation, Defendant now attempts to deflect attention from the real issues, and its liability, by moving to sue both the victim, Mr. Battles, and the identity thief, Elijah Decoursey. Dkt. No. 76 ("Motion").

The first issue the Court must decide is whether the breach of contract counterclaim is compulsory. It isn't because it does not arise from the same "aggregate core of operative facts" as Mr. Battles' FCRA claim. The facts driving the FCRA claim stem from Defendant's conduct in responding to the identity theft—its failure to reasonably investigate and correct false credit reporting under 15 U.S.C. § 1681s-2(b). The contract claim, by contrast, arises from a separate alleged event: the origination and nonpayment of a vehicle loan contract. While the claims have slight overlap, the contract claim targets a different person, invokes different legal elements, and turns on different facts in a different time frame. Therefore, the counterclaim is permissive because it fails the logical-relationship test.

The Court lacks jurisdiction over Defendant's permissive counterclaim. *See Bliss*

*v. ETM Tamiami, LLC*, No. 2:14-cv-710-FtM-38DNF, 2015 U.S. Dist. LEXIS 54799, at *4-5 (M.D. Fla. Apr. 27, 2015) (permissive counterclaims require an independent basis of jurisdiction). There is no independent basis of jurisdiction here because the counterclaim seeks $58,208.65 in damages, well under the requisite $75,000 amount in controversy for diversity jurisdiction. 28 U.S.C. § 1332. The Court should therefore deny the Motion because Defendant's counterclaim is beyond this Court's subject matter jurisdiction.

The second issue the Court must decide is whether, even if supplemental jurisdiction exists, the Court should decline to exercise it. The answer is yes. Allowing creditors to countersue for the underlying debt would chill enforcement of federal rights. Victims would face a Hobson's choice: vindicate your rights under federal law, or be countersued for debts you never incurred. As one court recognized, "[s]trong public policy is well served to prevent chilling effects of litigating FCRA claims with claims to collect underlying debt to establish exceptional circumstances to decline supplemental jurisdiction…." *Witt v. Experian Info. Sols., Inc.*, CV F08-0553 LJODLB, 2008 WL 2489132, at *5 (E.D. Cal. June 16, 2008).

Granting the Motion would also prejudice both Mr. Battles and the Court. The Court would need to amend the Case Management Order (Dkt. No. 68), extend discovery and trial deadlines, and delay resolution of Mr. Battles' FCRA claim. The timing makes this worse: Defendant has known about these claims since February 2025, yet filed its Motion the day after the Court's deadline to amend pleadings and join

parties expired. This eight-month delay warrants denial on prejudice grounds alone.

As explained below, Defendant's Motion should be denied in its entirety.[1]

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2025, Mr. Battles filed this action in the Central District of California against Defendants Experian Information Solutions, Inc. ("Experian"), and Defendant for actual damages, statutory damages, punitive damages, attorney's fees and costs for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").[2]

This action stems from the fraudulent purchase of a 2020 BMW 3 Series by Mr. Decoursey in August 2022 using Mr. Battles' personal identifying information. *See* Dkt. No. 1, at pp. 4-5.[3] Mr. Decoursey stole Mr. Battles' identity and used his personal identifying information, without his knowledge or consent, to purchase two fraudulent vehicles. *Id.* In connection with those fraudulent transactions, Mr. Decoursey forged Mr. Battles' signature on the documents related to the purchase of those vehicles. *Id.* ¶ 25. Defendant approved the financing for the BMW, which is associated with the GM Account No.: 111062XXXXXX ("Account"). *Id.* at ¶¶ 27-28. Defendant subsequently reported the Account with a charged-off balance of about $57,228 to Mr. Battles' credit reports with Experian, TransUnion, LLC, and Equifax Information Services, Inc. *Id.* at ¶¶ 29, 31.

---

[1] For the same reasons, the Court should deny leave to file the third-party claim against Decoursey.
[2] On June 20, 2025, Mr. Battles's claims against Experian were dismissed with prejudice. *See* Dkt. No. 58.
[3] The Complaint erroneously lists the subject vehicle in this case as a 2019 GMC Sierra (rather than the 2020 BMW 3 Series). This was a typographical error. The vehicle at issue in this lawsuit is solely the 2020 BMW 3 Series.

Upon learning that his identity was stolen, on or about June 16, 2023, Mr. Battles filed a police report with the Gainesville Police Department. Id. ¶ 30. Mr. Battles disputed Defendant's reporting of the fraudulent Account, providing all necessary documents and information, several times from approximately July 28, 2023 to July 14, 2024. *See id.* at ¶¶ 32-68. Yet Defendant continued reporting the Account on Mr. Battles's credit reports despite proof that it was not his and that he was the victim of identity theft. Id. ¶ 67.

On March 11, 2025, Defendant filed an Answer to the currently operative Complaint. Dkt. No. 16. On May 27, 2025, the case was transferred from the Central District of California to this Court. *See* Dkt. Nos. 29-31. On July 30, 2025, the Court issued a Case Management and Scheduling Order (Dkt. No. 68) setting various deadlines, including a September 28, 2025 deadline to amend pleadings and join additional parties. The Court also set an expert disclosure deadline of November 5, 2025 and discovery cut-off of January 6, 2026. *See id.* On September 29, 2025, Defendant filed the present Motion to which Mr. Battles timely opposes.

## III.    LEGAL STANDARDS

### A. Standard for Leave to Amend Under FRCP 15 and 16

Fed. R. Civ. P. 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." The filing of a motion for leave to amend does not mean it is automatically granted, as a district court retains discretion to deny leave to amend. *See Quillet v. Usha Jain*, No. 6:12-cv-1283-Orl-28TBS, 2013 U.S.

Dist. LEXIS 203136, at *5 (M.D. Fla. Sep. 17, 2013) "[U]ndue delay, undue prejudice to the [non-moving party], and futility of the amendment" are all grounds under Rule 15 to deny leave to amend. *Baker v. City of Safety Harbor*, No. 8:07-1120-CIV-T-23TGW, 2008 U.S. Dist. LEXIS 128146, at *5 (M.D. Fla. May 15, 2008).

"Any amendments leading to a modification of the required pretrial scheduling order are subject to a 'good cause' standard of scrutiny" under Rule 16. *See A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-Civ-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 222354, at *3 (S.D. Fla. Oct. 29, 2018) citing Fed. R. Civ. P. 16(b)(4). "If the court finds that the moving party did not act with due diligence then the inquiry into good cause ends." *Quillet*, 2013 U.S. Dist. LEXIS 203136, at *6.

### B. Compulsory v. Permissive Counterclaims Under FRCP 13

Fed. R. Civ. P. 13 provides for "compulsory" and "permissive" counterclaims, stating in part:

> **(a) Compulsory Counterclaim.**
>
> > (1) *In General.* A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:
> >
> > > (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> > > (B) does not require adding another party over whom the court cannot acquire jurisdiction.
>
> **(b) Permissive Counterclaim.** A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.

The test for determining whether a counterclaim rises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and is thus compulsory, is the "logical relationship" test." *Republic Health Corp. v. Lifemark Hosps. of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985); *United States v. Aronson*, 617 F.2d 119, 121 (5th Cir. 1980); *Neil v. S. Florida Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981). Both Florida courts and the Eleventh Circuit have adopted the logical relationship test to determine whether a cause of action is a permissive or compulsory counterclaim. The Eleventh Circuit has stated:

> Under this test, there is a logical relationship when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.

*Carroll by Carroll v. Parks*, 755 F.2d 1455, 1455 (11th Cir. 1985) (citing *Plant v. Blazer Financial Services, Inc.*, 596 F.2d 1357, 1361 (5th Cir. 1979); *see also, Equity Residential Properties Tr. v. Yates*, 910 So. 2d 401, 404 (Fla. 4th DCA 2005) (applying the logical relationship test).

Unlike compulsory counterclaims, permissive counterclaims require an independent basis of jurisdiction. *See Bliss v. ETM Tamiami, LLC*, No. 2:14-cv-710-FtM-38DNF, 2015 U.S. Dist. LEXIS 54799, at *4-5 (M.D. Fla. Apr. 27, 2015). That means a district court only has jurisdiction over a permissive counterclaim where that claim arises out of a federal question or diversity jurisdiction is established. *Id.*

## IV.    DEFENDANT'S MOTION SHOULD BE DENIED IN ITS ENTIRETY

### C. An amendment would be futile because the Court lacks jurisdiction over Defendant's permissive counterclaim.

"[A] district court may properly deny leave to amend when an amendment would be futile." *A.T.O. Golden Constr. Corp.*, 2018 U.S. Dist. LEXIS 222354, at *4; *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). When a party seeks to add a claim in which the district court lacks jurisdiction, that is grounds to deny leave to amend. *See, e.g., Simon Holdings PLC Group of Companies U.K. v. Klenz*, 878 F. Supp. 210, 213 (M.D. Fla. 1995) (noting "a court may deny such a request if the proposed amendment would be ineffectual because it could not withstand a motion to dismiss").

Here, as discussed below, Defendant is seeking to add a permissive counterclaim, yet has failed to establish an independent basis for jurisdiction over that state-law claim. As a result, the Court should deny the Motion in its entirety.

### 1.    *Defendant's breach of contract claim is a permissive counterclaim.*

Defendant's counterclaim fails the logical relationship test. It is permissive, not compulsory that requires its own independent basis for federal jurisdiction. *See Bliss*, 2015 U.S. Dist. LEXIS 54799, at *4-5.

Indeed, "actions to collect debts <u>are not compulsory counterclaims</u> to actions <u>predicated on the violation of consumer protection type laws</u>." *Equity Residential Properties Trust*, 910 So. 2d at 404 (emphasis added) (citing cases); *Whigum v. Heilig-Meyers Furniture Inc.*, 682 So. 2d 643, 646 (Fla. 1st DCA 1996) (holding "an action to collect a

consumer debt is not a compulsory counterclaim to an action under a statute regulating consumer collection practices."); *see also*, *O'Driscoll v. Arbor Grove Condo. Ass'n*, No. 8:22-cv-1984-VMC-JSS, 2023 U.S. Dist. LEXIS 76514, at *11 (M.D. Fla. May 2, 2023) ("With respect to consumer debt collection, 'the money collected is a separate matter from the statutory violation.'"); *France v. Ditech Fin., LLC*, 817CV3038T24MAP, 2018 WL 1695405, at *8 (M.D. Fla. Apr. 6, 2018) (finding FDCPA and FCCPA claims were not compulsory counterclaims in state court foreclosure action).

Here, Defendant's counterclaim and third-party complaint for breach of contract do not arise from the same aggregate set of operative facts as Mr. Battles' FCRA claim. Mr. Battles challenges Defendant's failure to reasonably investigate after receiving notice of identity theft—conduct governed by 15 U.S.C. § 1681s-2(b). The breach of contract claim, by contrast, concerns the origination and alleged nonpayment of a vehicle loan. While both claims touch on the same debt, they target different transactions, different time periods, and different legal elements.

A violation of the FCRA involves the improper reporting and handling of a consumer's credit file and failure to conduct a reasonable investigation after receiving a notice of dispute from a credit reporting agency. The evidence required to prove that claim generally turns on the reasonableness of the furnisher's investigation and the policies and procedures it has in place to comply with the FCRA. *See Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1301 (11th Cir. 2016). A breach of contract claim arises from separate contractual obligations and involves evidence surrounding whether there

was an enforceable contract that was breached. *See Pucci v. Specialized Loan Servicing*, No. 3:14-cv-1236-J-32MCR, 2017 U.S. Dist. LEXIS 234992, at *4 (M.D. Fla. July 6, 2017) ("Under Florida law, to establish breach of contract a Plaintiff must show the existence of a contract, a material breach, and resulting damages.").

Defendant may argue that because Mr. Battles disputes the debt's validity, the claims are factually intertwined. But the logical relationship test does not ask whether claims involve the same account or subject matter. It asks whether they arise from the same transaction or occurrence. Here, the FCRA claim arises from Defendant's post-dispute investigation failures in 2023-2024. The contract claim arises from the loan origination in 2022. These are separate transactions under the logical relationship test.

Thus, the breach of contract counterclaim does not satisfy the logical relationship test because the facts supporting that claim are inherently different from Mr. Battles' FCRA claim, and the evidence required to prove each claim would be substantially different. *See Barrios v. S. & Caribbean Agencies, Inc.*, No. 18-21550-CIV-WILLIAMS/TORRES, 2019 U.S. Dist. LEXIS 12758, at *7 (S.D. Fla. Jan. 28, 2019) (differing evidence and witness testimony supports a finding that a counterclaim is permissive).

This lack of logical relationship is especially stark here because Defendant seeks to sue both Mr. Battles and the identity thief, Mr. Decoursey, for breach of the same contract. This demonstrates that the contract claim does not arise from a coherent set of operative facts shared with Mr. Battles' FCRA claim. Indeed, Defendant's attempt

to pursue both the victim and the perpetrator for the same alleged breach underscores that its counterclaim rests on fundamentally different factual predicates than Mr. Battles' challenge to Defendant's credit reporting practices.

The Court should find that Defendant's claims against Mr. Battles and Mr. Decoursey are not compulsory counterclaims because Mr. Battles' claims for credit reporting violations under the FCRA are separate and apart from those raised by Defendant's breach of contract claim. An action to collect a consumer debt is not a compulsory counterclaim when the action concerns a violation of a consumer statute. And, as discussed below, since this claim does not have an independent basis for federal jurisdiction, leave to amend should be denied for futility.

   2.  *The Court lacks an independent jurisdictional basis over the permissive counterclaim.*

"Federal district courts are given supplemental jurisdiction over state claims that 'form part of the same case or controversy' as federal claims over which they have original jurisdiction. *Bliss*, 2015 U.S. Dist. LEXIS 54799, at *4-5 citing 28 U.S.C. § 1367(a). "This standard 'confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim.'" *Id.* citing *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997). "When a counterclaim is compulsory, this standard is satisfied." *Id.* "But when a counterclaim is permissive, it does not satisfy the § 1367(a) standard and instead requires an independent basis for jurisdiction — either federal question jurisdiction under 28 U.S.C. § 1331 or diversity

jurisdiction under 28 U.S.C. § 1332." *Id*.; s*ee also, Premium Leisure, LLC v. Gulf Coast Spa Mfrs., Inc.*, No. 8:08-cv-1048-T-24 EAJ, 2008 U.S. Dist. LEXIS 64098, at \*6 (M.D. Fla. Aug. 21, 2008). If a claim fails to meet the logical relationship test for compulsory counterclaims, it is "by definition, permissive." *Premium Leisure, LLC*, 2008 U.S. Dist. LEXIS 64098, at \*6.

Here, as discussed above, Defendant's breach of contract claim is not a compulsory counterclaim, and is therefore, "by definition" a permissive claim that requires its own independent basis for jurisdiction. *Id*. There is no federal question over this state-law claim. And diversity jurisdiction is not met because the amount in controversy is less than $75,000. *See* Dkt. No. 76-1, at pp. 27-28 (seeking $58,208.65 plus accrued interest, fees and other charges and less the value of the repossessed vehicle as of September 29, 2025); *see* also 28 U.S.C. § 1332 (noting "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").

Tellingly, Defendant does not even attempt to argue in its Motion how this Court has jurisdiction over this claim–and it fails to even address whether the claim is compulsory or permissive. *See generally*, Motion. Defendant also fails to include *any jurisdictional basis* for the breach of contract claim in its proposed amended pleading. *See* Dkt. No. 76-1, at pp. 26-27. This alone warrants a denial of the Motion. *See Freeman v. Smartpay Leasing LLC*, No. 6:17-cv-938-Orl-31GJK, 2019 U.S. Dist. LEXIS 128566, at \*2 (M.D. Fla. Aug. 1, 2019) ("A federal court cannot consider a permissive counterclaim

unless the counterclaimant asserts an independent jurisdictional basis."); *Stewart v. Orthopedic Innovators, Inc*, No. 09-20308-CIV-GOLD/MCALILEY, 2009 U.S. Dist. LEXIS 139183, at *4-5 (S.D. Fla. June 11, 2009) (holding same).

### 3. *Allowing the permissive counterclaim to proceed in this case would undermine the purpose of the FCRA.*

"Under section 1367(c)(4), a district court may decline to exercise supplemental jurisdiction over a claim if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Witt*, 2008 WL 2489132, at *4. One such compelling circumstance exists here.

Congress enacted FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. *See* 15 U.S. Code § 1681 ("It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information."). In furtherance of that purpose, the FCRA requires furnishers (like Defendant) to conduct reasonable investigations to ensure maximum possible accuracy of the information they report.

Allowing Defendant's breach of contract claim for underlying debt to proceed would have a chilling effect on consumers seeking to vindicate their rights, undermining the consumer protection purpose of the FCRA. Allowing a debt collector to sue for the underlying debt in a case brought under the FCRA may deter litigants from pursuing their rights under that statute:

> To allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this. Moreover, it would involve this Court in questions of no federal significance. Given the remedial nature of the FDCPA "and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of ... the target of the very legislation under which" a FDCPA plaintiff states a cause of action.

*Witt*, 2008 WL 2489132, at *4 (applying reasoning to FCRA claim) quoting *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 49 (W.D.N.Y. 1987).

The counterclaim undermines the consumer protection purpose of the FCRA, and inhibits Mr. Battles' ability to police the bad actions of furnishers like Defendant who fail to conduct a reasonable investigation and remedy credit reporting errors. This serves as a critical reason for the Court to decline jurisdiction over the counterclaim.

### D. FRCP Rule 16 Applies to Defendant's Motion Because the Amendment Will Require the Court to Modify the Scheduling Order.

"Federal Rule of Civil Procedure 16(b) establishes that a party must provide 'good cause' to modify a scheduling order." *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & DeCamp, LLP*, No. 6:19-cv-1908-WWB-EJK, 2021 U.S. Dist. LEXIS 207866, at *3 (M.D. Fla. Sep. 10, 2021). "The primary measure of good cause is the movant's diligence in attempting to meet the [Scheduling] Order's requirements." *Id.* (citation omitted). "This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *U.S. All Star Fed'n, Inc.*

*v. Open Cheer &amp; Dance Championship Series*, No. 6:21-cv-2135-WWB-DCI, 2022 U.S. Dist. LEXIS 226094, at *5 (M.D. Fla. Dec. 15, 2022). "The burden of establishing good cause rests on. . . the party seeking relief from the deadline in the Court's Scheduling Order." *A.T.O. Golden Constr. Corp.*, 2018 U.S. Dist. LEXIS 222354, at *8.

Here, Defendant brings this Motion to add a counterclaim and a new party to a case that has been at issue for nearly 8 months. The present discovery cut-off is just three months away. If the Court were to grant leave to add this claim and additional party, that would not leave enough time for either party to conduct discovery. The granting of this Motion would inevitability result in the Court having to amend the Scheduling Order–thus, Rule 16's good cause standard applies. By the time that Defendant is granted leave to add the new claim and party it will likely be in November 2025 at the earliest. And by the time Defendant is able to track down this Mr. Decoursey to serve him with the counterclaim, that would likely be just a month before the present discovery deadline.

As discussed below, Defendant could have bought this counterclaim months ago but chose to do on the eve of discovery closing. Defendant does not even attempt to meet its burden of establishing good cause exists under Rule 16. This serves as yet another reason for the Court to deny the Motion.

       1. *Defendant Delayed in Seeking to Assert the Present Counterclaim and Third-Party Complaint.*

"Substantial reasons justifying a court's denial of a request for leave to amend

include undue delay." *A.T.O. Golden Constr. Corp.*, 2018 U.S. Dist. LEXIS 222354, at *4; *Wyndham Vacation Ownership, Inc.*, 2021 U.S. Dist. LEXIS 207866, at *3. "Even when the amendment is sought as a result of new information obtained during discovery, it is not an abuse of discretion to deny leave to amend if the moving party unduly delays pursuit of the amended pleading." *A.T.O. Golden Constr. Corp.*, 2018 U.S. Dist. LEXIS 222354, at *4. "When evaluating diligence in seeking an amendment, the "inquiry focuses on whether the facts underlying the proposed amendment were available, but not discovered, in a timely manner." *Baker*, 2008 U.S. Dist. LEXIS 128146, at *4.

Here, Defendant has known since at least February 2025 (and likely even before) of this potential counterclaim yet waited 8 months to attempt to bring it. In its Motion, Defendant does not address the reasons for this belated request to amend. Defendant was not diligent in seeking the present amendment, and has not even attempted to show good cause. "No diligence, no good cause, no leave to amend." *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1252 (M.D. Fla. 2000). The Court should deny its Motion in its entirety.

2. *Adding An Additional Party and Claim Will Delay the Prosecution of This Case and Prejudice Mr. Battles.*

"[A] district court need not allow an amendment where allowing the amendment would cause undue prejudice to the opposing party." A.T.O. *Golden Constr. Corp.*, 2018 U.S. Dist. LEXIS 222354, at *3. If the Court were to allow this counterclaim to proceed with just three months left to complete discovery, that would undoubtably prejudice

Mr. Battles. Indeed, Mr. Battles will either be forced to conduct discovery as to this new claim in less than three months or be forced to seek leave from the Court for additional time to do so. In either situation, it would not be due to any fault of Mr. Battles, so he should not suffer the consequences of Defendant's delayed attempt to add this claim.

## V.    CONCLUSION

Given the forgoing, Defendant's Motion should be denied in its entirety.

Respectfully Submitted,

/s/ Darren R. Newhart
Darren R. Newhart, Esq.
FL Bar No: 0115546
E-mail: darren@newhartlegal.com
NEWHART LEGAL, P.A.
14611 Southern Blvd. Suite 1351
Loxahatchee, FL 33470
Telephone: (561) 331-1806
Facsimile:  (561) 473-2946

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 10, 2025, I electronically filed the foregoing document with the Clerk of Court. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ Darren R. Newhart

Darren R. Newhart, Esq.

## **<u>SERVICE LIST</u>**

All counsel of record.